# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

               Plaintiff,        Case No. 5:17-cr-20831

v.                                 Judith E. Levy
                                   United States District Judge

Miguel Elizondo,

                                   Mag. Judge Mona K. Majzoub

               Defendant.

_____/

## ORDER DENYING MOTION TO SUPPRESS [20]

On December 12, 2017, Miguel Elizondo was named in a single-defendant five-count indictment on firearm and drug offenses. (Dkt. 10.) The charges are based on evidence seized by Dearborn, Michigan police officers pursuant to a warrant to search Elizondo's home issued by a state-court judge. Elizondo now moves to suppress that evidence. He argues that the warrant lacked probable cause because there was an insufficient nexus between the items to be seized and defendant's alleged criminal conduct, and it cannot be saved by the good faith exception set

forth in *United States v. Leon*, 468 U.S. 897 (1984).[1] (Dkt. 20.) The government responds that the affidavit set forth probable cause, and if it did not, the good faith exception applies. (Dkt. 24.)

I.  **Background**

The facts are not in dispute. On November 29, 2017, a Dearborn, Michigan police officer, Joshua Urbiel, who was then serving as a Corporal in the Dearborn Police Narcotics Unit, submitted a request for a search warrant to State of Michigan 19th District Court Judge Sam Salamey. The affidavit in support of the warrant had been reviewed by an Assistant Wayne County Prosecutor. The affidavit set forth Officer Urbiel's experience as a narcotics investigator and indicated that as a result of his training and experience, he is aware that drug traffickers

---

[1] Initially, defendant argued that the warrant was "stale," but he abandoned this argument in his reply brief and at oral argument held on March 26, 2018. Even if he had not abandoned the argument, the Court would not grant the motion on this theory. The Sixth Circuit has consistently found the staleness argument without merit in cases with circumstances analogous to this one. *See, e.g. Jackson*, 470 F.3d 299 at 308 (three-day period between controlled buy and issuance of the search warrant was not stale evidence); *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003) (search warrant not stale where controlled purchase by informant, on which warrant was based, took place three days before issuance of warrant). The evidence obtained from the controlled buy in this case, which took place within 48 hours prior to the warrant being issued and executed, was not stale.

conceal contraband, including drugs and firearms, in their homes, along with various records and large amounts of cash.

The affidavit further indicated that Officer Urbiel had received information from a confidential informant, CI# 508, regarding a cocaine and fentanyl dealer that the CI knew as "Miguel." CI #508 indicated that Miguel was a Hispanic man who "distributed drugs from a red Ford Explorer Sport Trac and possibly lived in the area of Silvery Lane and Cherry Hill, in Dearborn, MI." (Dkt. 20 at 14.) The CI also indicated that he believed "Miguel supplies large quantities of cocaine, heroin, and fentanyl to area strip clubs." (*Id*.)

The affidavit goes on to describe how the affiant verified the information from CI# 508. For example, the CI provided a phone number for Miguel and the affiant traced it to a Miguel Antonio Elizondo, who lives at 460 Kingsbury, Dearborn, Michigan. Although that Elizondo had a 1965 date of birth, the affiant checked law enforcement databases and located a Michigan driver's license for a man with the same name and same address who is much younger, having been born in 1983. Officer Urbiel showed the license photograph to the CI, and he positively identified that individual as the defendant, Miguel Elizondo. Sure

3

enough, Officer Urbiel went to the 460 Kingsbury address, and a red Ford Explorer Sport Trac was parked on the street next to the home. He then ran a lien check on the license plate number and the connection was complete. The Ford Explorer was registered to Miguel Elizondo, of 460 Kingsbury, in Dearborn, Michigan.

A criminal history check revealed that Elizondo had the following "drug related charges/convictions:" a February 1990 felony drug conviction, a June 1992 felony drug conviction, an October 2008 felony prostitution-related conviction, and an August 2011 felony drug conviction. This information was contained in the affidavit. (Dkt. 20 at 14–15.)

Officer Urbiel went on to describe the controlled buy in some detail. All of the usual activity took place to make sure the CI did not already have drugs on him, and his call to the defendant was monitored by Officer Urbiel. He was given pre-recorded money for the transaction and was kept under surveillance throughout the buy. Meanwhile, another Dearborn police corporeal was surveilling Elizondo's home on Kingsbury Street. That officer saw Elizondo exit the side door to his home and enter the red Ford Explorer Sport Trac that the CI had previously told them

Miguel used to distribute drugs. At the hearing on this motion, the Court asked the government whether this officer saw anything in Elizondo's hands, or whether he was carrying a backpack or holding anything at all that might contain drugs or other contraband. Counsel for the United States indicated that he was not seen carrying anything. (Tr. at 31, March 26, 2018.)

The affidavit indicates that the controlled buy was successful, and CI #508 turned over the suspected heroin. He and his vehicle were searched again with negative results. The suspected heroin was tested by the Dearborn Police Narcotics office and a preliminary field test confirmed that it was, indeed, heroin. Interestingly, "[f]ollowing the controlled purchase, surveillance was terminated on ELIZONDO." (Dkt. 20 at 15.)

Based upon this, Officer Urbiel believed there was probable cause to search Elizondo's home, and 48 hours later he submitted a warrant request with an affidavit setting forth the information above. State of Michigan 19th District Court Judge Salamey agreed. The warrant was executed the same day, November 29, 2017. Officers recovered drugs and guns from the house, and on December 12, 2017, Miguel Elizondo was

indicted on three counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a): one count for distribution of heroin, another count for distribution of cocaine, and the third count for distribution of crack cocaine. The indictment also contained one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). This motion was filed in a timely manner on January 19, 2018, and the government responded. Oral argument was held on March 26, 2018.

II. Anaylsis

The Fourth Amendment requires that warrants be supported by probable cause. To be sufficient, the affidavit supporting the warrant must establish probable cause to believe that evidence of narcotics trafficking would be present at the place to be searched, in this case the 460 Kingsbury Street home on November 29, 2017. *See United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d

931, 934 (6th Cir. 1990). It is said to exist "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place. *Davidson*, 936 F.2d at 859; *see also United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003).

In reviewing the sufficiency of a search warrant affidavit, the "magistrate's determination of probable cause is afforded great deference," and should only be reversed if arbitrarily made. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001). The "review of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than line-by-line scrutiny." *Greene*, 250 F.3d at 479.

### *a. The affidavit did not establish a sufficient nexus between the place to be searched and the evidence sought*

"Probable cause justifying the issuance of a search warrant is established if the affidavit contains particularized facts demonstrating a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Elbe*, 774 F.3d 885, 888 (6th Cir. 2014) (internal citations omitted). "The critical element in a reasonable search is not that the owner of property is suspected of crime, but that

7

there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier,* 423 F.3d 526, 532 (6th Cir. 2004) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

The search warrant affidavit must establish a nexus between the place to be searched and the evidence sought. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "The nexus can be inferred from 'the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere, and the normal inferences that may be drawn as to likely hiding places." *Elbe*, 774 F.3d at 889–90. However, "[t]he connection between [a] residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *Carpenter*, 360 F.3d at 595). "If the affidavit does not present sufficient facts demonstrating *why the police officer expects to find evidence in the residence rather than in some other place*, a judge may not find probable cause to issue a search warrant." *Brown*, 828 F.3d at 382 (emphasis added). Whether an affidavit establishes a proper nexus is a fact-intensive question resolved by

examining the totality of the circumstances presented. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

This case presents the question of how much evidence is needed to establish a proper nexus between the drugs we know the defendant sold to the confidential informant and his home. In the Sixth Circuit, being a drug dealer and living in a home is not enough to establish probable cause to search the home. *See Peffer v. Stephens*, 880 F.3d 256, 269 (6th Cir. 2018) ("[W]e have never held . . . that a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in the home.") (quoting *Brown*, 828 F.3d at 383).[2]

In the present case, the affidavit establishes that "'Miguel' supplies large amounts of cocaine, heroin, and fentanyl to area strip clubs." (Dkt. 20 at 14.) This, arguably, establishes that defendant was engaged in a "continual and ongoing" distribution scheme. *See United States v.*

---

[2] *Peffer* cites several Sixth Circuit cases to illustrate affidavits that *do* establish a sufficient connection to establish probable cause. For example, the affidavit in *United States v. Brown*, 828 F.3d 375 (2016), established an informant identified the defendant as the "cook" of a large ongoing trafficking operation that was taking place on his property, which was corroborated by independent evidence; the affidavit in *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), established that the defendant was engaged in a "continual and ongoing" drug distribution scheme; and the affidavit in *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998), established that the defendant was seen distributing narcotics directly outside of his domicile.

*Newton*, 389 F.3d 631, 636 (6th Cir. 2004). It is not clear, however, how this establishes that drugs would be found at his residence. The affidavit also establishes that defendant left his home, entered his car, and drove directly to a controlled buy. (Dkt. 20 at 15.) Again, it is not clear that this establishes – as required by *Peffer* – any "other reason to believe" that additional drugs would be found in a search of defendant's home. *Peffer*, 880 F.3d at 273.

The government argues that *United States v. Ellison* stands for the principle that "where, like [in the present case], an affidavit explains observations connecting the suspect to the place to be searched, the nexus requirement is satisfied." (Dkt. 24 at 9.) *Ellison* does not support such a broad proposition. Instead, the case asserts a more narrow holding:

> *Commission of a drug transaction outside of a house and one participant's walking back into the house, as observed in this case, plainly demonstrated a sufficient nexus with the house.* The affidavit explained that a confidential informant had observed someone come out of Ellison's house, engage in a drug transaction [immediately outside of the house], and then return into the residence. These incriminating actions are inextricably connected to the residence for which the search warrant was sought. From these actions, the affiant and the issuing judge could infer that there was a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence, such that a

> search of the residence would be likely to yield contraband or evidence of a crime.

*United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (emphasis added).

In *Ellison*, the CI observed the drug transaction taking place in the immediate vicinity of the property. Because the CI observed the entire sequence of events – exiting the house, conducting the transaction, and returning to the house – it is undeniable that the drugs involved in the transaction were kept in defendant's home prior to the sale. And although the transaction did not take place *inside* the home, it took place *at* the home. Accordingly, it was clear to the court that "there was a fair probability that . . . drug trafficking was taking place *from the residence*."

The facts are not as clear here. In this case, the affidavit states only that defendant was observed exiting his home, entering his car, and driving to a different location to engage in a drug transaction. Police did not continue to observe defendant after the controlled buy was completed. The affidavit does not provide any information regarding what, if anything, defendant was carrying when he exited his home. The affidavit makes no mention of any criminal activity suspected or observed at the

11

residence, and, in fact, confirms only that "Miguel . . . distributed drugs from a red Ford Explorer Sport Trac." (Dkt. 26-1 at 5.)

The government emphasizes that "the affiant noted that it is common for drug traffickers to secret contraband in their homes." Dkt. 24 at 11.) They further argue that "the incriminating actions of defendant are inextricably intertwined with his residence." (*Id.*) And finally, they assert that "[t]he affidavit also does not describe [defendant] stopping at any other location prior to controlled buy." (*Id.*) The government concludes by asserting "[f]rom a practical, commonsense standpoint, it is more likely than not that [defendant] retrieved drugs from his home before the controlled buy." (*Id.*)

None of the government's arguments successfully rebut defendant's argument from *Peffer*: "Recognizing that '[i]n the case of drug dealers, evidence is likely to be found where the dealers live,' we nevertheless held that 'if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, . . . it cannot be inferred that drugs will be found in the defendant's home – even if the defendant is a known drug dealer.'" *Peffer,* 880 F.3d at 272–73 (quoting *Brown,* 828 F.3d at 383–84). The bare assertion that defendant departed

his home prior to engaging in a drug transaction does not "directly connect the residence with the suspected drug dealing activity." *Id.* The affidavit does not establish a sufficient nexus for a judge to find probable cause to issue a warrant for the residence.

### *b. Despite the insufficient nexus to establish probable cause, the good faith exception applies*

"Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922–23 n.23.

"*Leon*'s good faith exception does not apply in the following sets of circumstances: (1) the supporting affidavit contained knowing or reckless falsity; (2) the issuing magistrate wholly abandoned his or her judicial

13

role; (3) the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable." *Frazier,* 423 F.3d at 533 (quoting *Leon,* 468 U.S. at 923). Defendant argues that the third exception applies in this case.

An affidavit lacks the requisite indicia of probable cause if it is a "bare-bones" affidavit. *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013) (citing *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). "The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause." *Rose,* 714 F.3d at 367 (citing *Laughton,* 409 F.3d at 748–49). "The bare-bones inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and that go beyond bare conclusions and suppositions." *Rose,* 714 F.3d at 367 (citing *Laughton,* 409 F.3d at 749).

The Sixth Circuit elaborated on the distinction between the nexus requirement for probable cause and the nexus requirement to satisfy the

good faith exception in *United States v. Washington*, 380 F.3d 236, 242–43 (6th Cir. 2004) (confirming that the "so lacking in indicia" test is less demanding than the "substantial basis" test). While the facts of the case are not precisely the same as those in the underlying case, the Sixth Circuit affirmed that the affidavit's "visible nexus connecting Washington to the house, Washington to the Cadillac, and the Cadillac to the house" provided a sufficient connection between a drug dealer and his home such that the good faith exception applied. *Id.*

*Washington* can be distinguished from the present case on the basis that the affidavit contained a reference to an armed robbery at the residence two months prior, which according to the affiant, "was indicative of suspects searching for narcotics or cash." It is not clear, however, that such evidence would have been necessary for the Sixth Circuit to find the good faith exception applied. In dicta, the court appeared satisfied that the connections between the defendant to the house, the house to the car, and the car to the house were sufficient. The affidavit in the present case provides precisely those connections.

Defendant argues that *Laughton* supports his proposition that the good faith exception should not apply because "there was 'no modicum of

evidence, however, slight, to connect the criminal activity to the place to be searched.'" (Dkt. 26 at 10 (quoting *Laughton*, 409 F.3d at 749).)

It is true that in *Laughton* the Sixth Circuit held that the good faith exception to the exclusionary rule did not apply, even in a situation where "the affidavit at issue [ ] included statements indicating that the informant purchased methamphetamine multiple times and that the informant observed controlled substances at or in the defendant's residence." (Dkt. 26 at 10 (citing *Laughton*, 409 F.3d at 746–47).) However, the shortfall identified in the affidavit in *Laughton* is that it did not provide any information whatsoever about the "residence" in question. On the face of the affidavit, there was *nothing* (no address, no description, etc.) from which the magistrate could have determined that there was probable cause to search the particular residence for which the warrant was issued. As the court stated "[t]he warrant in this case failed to make any connection between the residence to be searched and the facts of the criminal activity that the officer set out in his affidavit. That affidavit also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there." *Laughton*, 409 F.3d at 747.

When the court in *Laughton* asserted that "[t]he warrant in this case failed to make any connection between the residence to be searched and the facts of the criminal activity that the officer set out in his affidavit," it was true the most literal sense. Within the four corners of the affidavit, there was *literally nothing* to connect the defendant or the criminal activity to the address for which the warrant was sought because the affidavit referred only in general terms to defendant's residence and/or home. On that basis, the Sixth Circuit declared that the good faith exception did not apply.

The affidavit in this case clearly establishes the precise residence, and includes corroborated evidence that the residence in question is defendant's home. The question is whether the limited information connecting the criminal activity to the residence established a sufficient nexus. Given the facts of this case, *Laughton* is not instructive regarding whether the good faith exception applies.

The affidavit in this case connects defendant to the vehicle, the vehicle to the house, and the house to defendant. *Washington* confirms that these are the precise connections required to overcome the "so lacking in minimal indicia" test in order for the good faith exception to

17

apply.[3] *Washingon*, 380 F.3d at 242–43. Accordingly, although this warrant lacked probable cause, the good faith exception is applicable in this case.

### III. Conclusion

For the reasons set forth above, defendant's motion to suppress is DENIED.

IT IS SO ORDERED.


Dated: April 24, 2018　　　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge


### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2018.

　　　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　　　Case Manager

---

[3] The constitutional validity of the warrant is even clearer under Michigan law. *See, e.g., People v. Darwich*, 226 Mich. App. 635, 639 (1997) (confirming that, based on the affiant's experience which led him to believe that it is common for drug dealers to store drugs in a different location than they sell them, the "[d]efendant's residence was a logical place to look for the source of the [drugs]").