UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,                                  Criminal No 17-20831

   v.                                         Hon. Judith E. Levy

Miguel Elizondo

    Defendant.

_____/

**United States' Response Opposing
the Defendant's Motion for Compassionate Release**

Miguel Elizondo was a heroin and cocaine dealer in Dearborn. He pleaded guilty to two counts of possession with intent to distribute controlled substances and last year this Court sentenced him to 30 months imprisonment. (R.45: Judgment). While on bond for his case, Elizondo repeatedly tested positive for controlled substances and this Court revoked his bond last June. He began serving his current sentence on June 20, 2019. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

1

Elizondo does not satisfy the substantive requirements for compassionate release. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Even assuming a defendant facing a heightened risk from Covid-19 could satisfy the criteria in § 1B1.13(1)(A) & cmt. n.1, Elizondo does not have a condition that places him at higher risk from Covid-19. Elizondo's offense and criminal history make him a danger to the community, which precludes release under USSG § 1B1.13(2), because Elizondo has a history of drug related offenses, failures to abide by court supervision, and has shown an inability to be deterred from engaging in new criminal activity. This type of behavior presents a danger to the community, because Elizondo may resort to the use of drugs or selling drugs to which negatively impacts society. And the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release because Elizondo's decision to organize the distribution heroin and cocaine to

2

the community is dangerous, particularly given Elizondo's own struggles with addiction and the criminal justice system.

## Background

Law enforcement identified Elizondo as a local drug-dealer a few years ago. In their investigation, law enforcement observed Elizondo leave his house and drive directly to a meet-spot with a confidential source to sell the source drugs. After the controlled buy, law enforcement obtained and executed a search warrant at Elizondo's home that he shared with his fiancé and minor child. In the home, officers seized a 9mm firearm, two magazines for Glocks loaded with ammunition, a Raven Arms .25 caliber firearm with a corresponding magazine, and various 9mm ammunition. Law enforcement also recovered the following: 40.83 grams of heroin, 6.98 grams of cocaine, .41 grams of crack cocaine, assorted drug packaging materials, including plastic gloves, four plastic cylinders containing suspected heroin, a digital scale, and $4850.00 in United States currency.

Elizondo began serving his prison sentence last year, and is currently incarcerated at FCI Milan. He is 54 years old, and his projected release date is August 1, 2021. His underlying medical conditions include hepatitis c, Bell's palsy, and Guillane-Barre syndrome. Elizondo has moved for compassionate release, citing his medical conditions and the Covid-19 pandemic. On June 8, 2020 Elizondo sent a memo to the warden requesting a reduction in his sentence due to his medical conditions and the Covid-19 pandemic. The Warden at FCI Milan denied that request on July 27, 2020.

## Argument

**I. The Bureau of Prisons has responded to Covid-19 by protecting inmates and increasing home confinement.**

**A. The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.**

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2 (6th Cir. June 9, 2020). For over almost a decade, the Bureau of Prisons has maintained a [detailed protocol](#) for responding to a pandemic. Consistent with that protocol, the Bureau of

4

Prisons began planning for Covid-19 in January 2020. *Wilson*, 2020 WL 3056217, at *2.

On March 13, 2020, the Bureau of Prisons began modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *Id.*; *see* [BOP Covid-19 Modified Operations Website](). Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 2020 WL 3056217, at *2. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing

5

quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* [BOP FAQs: Correcting Myths and Misinformation](). Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 2020 WL 3056217, at *2. Social and legal visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

6

## II. The Court should deny Elizondo's motion for compassionate release.

Elizondo's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow requiring all of the following: (1) exhaustion of administrative remedies; (2) an extraordinary and compelling reason for release; and (3) evaluation of the section 3553(a) factors that favor detention. While the United States does not contest that Elizondo has satisfied Section 3582(c)(1)(A)'s exhaustion requirement, his motion fails the last two policy directives of section 3582.

7

### B. Elizondo is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *Marshall*, 954 F.3d at 830. In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction

8

authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in [Program Statement 5050.50](). USSG § 1B1.13 cmt. n.1.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau

9

of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Elizondo and other inmates. *See Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2, *8 (6th Cir. June 9, 2020). Thus, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 2020 WL 3056217, at *11.

Elizondo's age and medical condition likewise do not satisfy the requirements for release in USSG § 1B1.13 cmt. n.1, even when considered in combination with the Covid-19 pandemic. Though Elizondo does suffer from diseases that appear to attack his joints and cause paralysis as well as hepatitis c, those illnesses do not place him at a higher risk for complications from Covid-19 or meet the required criteria for release under USSG § 1B1.13 cmt. n.1. [CDC Website, People at Higher Risk](#) So whether considered alone or in combination with the

10

Covid-19 pandemic, Elizondo's age and medical condition do not satisfy the initial eligibility criteria for release under USSG § 1B1.13 cmt. n.1. *See United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5–*6 (E.D. Mich. May 15, 2020).

Elizondo also remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of violent offenders, including most drug dealers. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010); *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). It also bars the release of many other defendants. An evaluation of dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam).

11

Because Elizondo's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). Elizondo has an extensive criminal history, that includes weapons offenses, drug offenses, and failing to abide by the terms of court ordered supervision. In this case, he distributed two highly addictive drugs (heroin and cocaine) to the public, while possessing drug paraphernalia, drugs and weapons in a home he shared with his family. Given his criminal history and inability to refrain from engaging in criminal activities after terms of incarceration or other judicial oversight (like refraining from the use of drugs on pretrial release), Elizondo still presents a danger to the community.

Elizondo is not eligible for compassionate release.

### C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that

12

release is appropriate. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Elizondo eligible for compassionate release, the § 3553(a) factors should still disqualify him.

Last year, this Court sentenced Elizondo to 30 months in custody due to the nature of his offense, his criminal history, and the drug/mental health treatment that the parties believed he needed to get his life on track. Those concerns are still present today, despite the Covid-19

pandemic. Elizondo has a history of engaging in new criminal activities, substance abuse, and a general lack of respect for the law. Distribution of drugs and possession of firearms by convicted felons is dangerous, particularly now during the pandemic when violence has increased in our society. The 3553(a) factors, which this Court carefully considered just last year deciding that a 30-month sentence was sufficient but not greater than necessary, continue to support this defendant's continued incarceration.

### III. If the Court were to grant Elizondo's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Elizondo's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

### Conclusion

Elizondo's motion should be denied.

Respectfully submitted,
MATTHEW SCHNEIDER
United States Attorney

14

          */s Jihan M. Williams*
JIHAN M. WILLIAMS
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9250
Jihan.williams@usdoj.gov

Date: August 5, 2020

15

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent a copy of the document via notification to:

- Lisa Dwyer, Counsel for Miguel Elizondo

        */s Jihan M. Williams*
        JIHAN M. WILLIAMS
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan  48226-3211
        (313) 226-9250
        Jihan.williams@usdoj.gov